**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DAKOTA HOLT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | FILE No. 1:19-cv-00605-LMM |
| ROCK N TACO, INC. and | ) | |
| GARDBUCK, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT DECREE

This Consent Decree (this "Agreement") is made and entered into by and between Dakota Holt ("Plaintiff") on the one hand, and Rock N Taco, Inc. ("RNT") and Gardbuck, LLC ("Gardbuck") on the other (together, RNT and Gardbuck shall be referenced as "Defendants," and Plaintiff and Defendants shall be referenced as the "Parties"). This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

## PREAMBLE

**WHEREAS**, on February 5, 2019, Plaintiff asserted claims for injunctive relief against Defendants, based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq*. ("ADA") and related

1

claims for relief respecting the real property located at or about 3247 Roswell Road, N.E., Atlanta, Georgia 30305, Fulton County Property Appraiser's parcel number 17 009900030268; (the structure situated upon such real property shall be referenced as the "Facility" and the real property such structure is situated upon shall be referenced herein as the "Property"); and

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation; and

**WHEREAS**, the Parties have agreed to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendants shall be fully, forever, and finally released;

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. <u>**Attorney's Fees and Costs**</u>

1.1    The Parties shall execute this Agreement and Plaintiff's Counsel, The Law Office of Craig J. Ehrlich, LLC, shall prepare a Joint Stipulation to Approve Consent Decree and Dismissal with Prejudice ("Joint Stipulation") to be distributed to all Parties for execution. Defendants agree to pay to Plaintiff's Counsel, within fourteen (14) days of the entry by the Court of the Order

Approving Consent Decree and Dismissal of Defendants with Prejudice (the "Order"), attorney's fees and costs of litigation in the amount of $4,850.00 (Four Thousand Eight Hundred Fifty Dollars and No Cents). Said payment shall be made payable to "The Law Office of Craig J. Ehrlich, LLC IOLTA" and delivered to The Law Office of Craig J. Ehrlich, LLC, 1123 Zonolite Road, N.E., Suite 7-B, Atlanta, Georgia 30306.

1.2    Upon delivery to Plaintiff's Counsel of the fully executed Agreement, Plaintiff shall promptly file the Joint Stipulation to Approve Consent Decree and to Dismiss with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

1.3    Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of his or its own litigation expenses, costs and attorneys' fees.

1.4    Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Payment hereunder. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendants have not made any representations regarding the tax consequences of any Payment received pursuant to this Agreement.

3

1.5    The Parties agree that a condition precedent for the validity of this Agreement is the Court's retaining jurisdiction to enforce the Agreement.

**2.    <u>Alterations or Modifications to the Facilities</u>**

2.1    The Parties hereto acknowledge and stipulate that Defendants shall modify or alter the items expressly identified by and in the manner specified in "Exhibit 1." The repairs or modifications identified in "Exhibit 1" shall be completed in all respects no later than eighteen (18) months from the entry of the Order.  The time period for completion by Defendants shall be subject to acts of God, force majeure, or events beyond the control of Defendants, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of such unforeseen circumstances, the time period for completion of the alterations or modifications in "Exhibit 1" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendants provide notice to Plaintiff's Counsel prior to the original completion date set forth above. Either RNT or Gardbuck may provide this notice.

2.2    Upon completion of the alterations and modifications set forth in "Exhibit 1," Defendants shall provide written notice by certified or registered mail, or via electronic mail, to Plaintiff's Counsel. Either RNT or Gardbuck may provide

this notice.

2.3    If the modifications or alterations described in "Exhibit 1" conflict with Georgia law, building construction standards, county or city regulations or codes, or any other statute, act, law, rule, regulation, code, standard, or state or local governing body whatsoever, Defendants shall attempt to identify and implement a reasonable alternative solution or variance should a readily achievable one exist.  If any such alternative solution is applied by Defendants, Defendants agree to notify Plaintiff's Counsel of the same prior to initiating any such alternative solution.  It is a material provision of this Agreement that Plaintiff shall approve any alternative solution(s) prior to its (or their) implementation, and further, Plaintiff's approval of any alternative solution(s) proposed by either Defendant shall not be unreasonably withheld.

2.4    The Parties stipulate that after Plaintiff's Counsel receives notice of the completion of the alterations or modifications described in "Exhibit 1" or after the elapse of the eighteen (18) month time period set forth in Paragraph 2.1 above, whichever is sooner, Plaintiff may inspect the Facility and Property to ensure that Defendants have completed the modifications or alterations described in "Exhibit 1," subject to Paragraph 3 below, and Defendants shall provide Plaintiff or his designated representative reasonable access to the Facility and Property to verify completion of the work described in "Exhibit 1."

2.5    If an inspection contemplated herein reveals that any of the alterations or modifications described in "Exhibit 1" have been performed in a manner that does not materially comply with "Exhibit 1," Plaintiff shall have the right to enforce this Agreement pursuant to Section 4, below.

2.6    It is agreed by the Parties that upon all of the modifications being completed as set forth in "Exhibit 1," the Facility and Property will be deemed fully compliant with the ADA and 2010 ADAAG pursuant to the readily achievable standard.

**3.    Lease Expiration or Lease and/or Ownership Termination.**  In the event that (a) RNT's lease to occupy the Facility and/or Property expires or RNT terminates it, or if (b) said lease is terminated by Gardbuck, or if (c) RNT ceases conducting business at the Facility for a uninterrupted period of one hundred twenty (120) days or more, or (d) abandons, vacates or ceases its occupation of the Facility and/or Property for an uninterrupted period one hundred twenty (120) days or more, or (e), if Gardbuck ceases to have any ownership interest in the Facility or Property, Defendants shall not be required to make the modifications set forth in "Exhibit 1."

**4.    Enforcement Provisions**

If Plaintiff contends that an inspection performed pursuant to Paragraph 2.4 of this Agreement reveals that any of the alterations and/or modifications described in "Exhibit 1" have been performed in a manner that does not materially comply

with "Exhibit 1," Plaintiff shall provide notice to Defendants via certified mail at the address listed in Paragraph 7.1 of this Agreement, below. Defendants shall have one hundred and twenty (120) days after receipt of such notice to cure any alleged non-compliant alterations and modifications. If Defendants do not cure the alleged non-compliant alterations or modifications, Plaintiff shall have the right to move this Court to enforce this Agreement.

**5. Compromise**

The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in Paragraph 6.1 below). Defendants expressly deny any such liability, wrongdoing, or responsibility.

**6. Release Given By Plaintiff in Favor of Defendants**

6.1     In exchange for the good and valuable consideration set forth herein, Plaintiff and his respective agents, members, successors, assigns, parent entities, subsidiary entities, heirs, officers, predecessors, directors, affiliated persons and/or entities, and anyone claiming by or through them (collectively, the "Releasing Parties"), hereby fully and finally release, acquit, satisfy, and discharge Defendants, and each of their respective agents, predecessors, successors, assigns, heirs, parent entities, subsidiary entities, officers, directors, shareholders, employees, attorneys,

affiliated persons or entities, and all current and former tenants or lessees of the Facility and/or Property (collectively, the "Released Parties"), of and from any and all legal or equitable claims, demands, liabilities, debts, judgments, damages, expenses, actions, or causes of action arising under Title III of the ADA and/or any other federal, state, or local law governing access features and policies for persons with disabilities at public accommodations whether before any federal, state, or local agency, court of law, or in any other forum, and any and all claims that could have been alleged in the Action regarding the Facility and/or Property. This release also includes all claims for attorney's fees and costs, expert fees and costs, or any other fee or cost incurred to date, with the exception of (a) the attorney's fees and costs set forth in Paragraph 1.1, above, and (b) any attorney's fees and costs resulting from any future action taken by any of the Parties to enforce the terms of this Agreement.

6.2    As a material inducement for Defendants to enter into this Agreement, Plaintiff represents and warrants that he is not aware of any pending tort, contract, or other legal or equitable claims against Defendants, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

6.3    Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which

8

they might be entitled have been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

7.   **Notice**

7.1   Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

**To Plaintiff:**

The Law Office of Craig J. Ehrlich, LLC
1123 Zonolite Road, N.E. Suite 7-B
Atlanta, Georgia 30306
Fax: (855) 415-2480
craig@ehrlichlawoffice.com

**To RNT:**

John F. Wymer, Esq.
Thompson Hine LLP
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326-4266
John.Wymer@ThompsonHine.com

**To Gardbuck:**

Victor W. Newmark, Esq.
Wiles and Wiles, LLP
800 Kennesaw Avenue, Suite 400
Marietta, Georgia 30060
vnewmark@evict.net

7.2    Any Party may change such address for the purpose of this paragraph by giving timely written notice of such change to the other Parties to this Agreement in the manner provided in this paragraph.

## 8.    <u>Free Will</u>

The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

## 9.    <u>Miscellaneous Terms and Conditions</u>

9.1    This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein

9.2    This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

9.3    This Agreement may be modified only by a written document signed

by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

9.4    This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

9.5    If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

9.6    The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

9.7    Plaintiff represents that, other than the Action, he has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendants with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a

11

complaint, charge, or lawsuit has been filed on his behalf, he or it will use his or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

9.8    The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

9.9     In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all reasonable attorneys' fees, litigation expenses, and costs.

9.10   The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding Paragraph 1 are incorporated as a material part of this Agreement.

9.11   This Agreement is entered into in, and shall be governed, construed and interpreted in accordance with the substantive laws of, the State of Georgia.

[signatures appear on the following page]

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

**"PLAINTIFF"**

_____
Dakota Holt

Date 03/29/19 _____

**"RNT"**


_____
Rock N Taco, Inc.

By: _____ (Print Name)

As its: _____ (Title)

Date _____

**"GARDBUCK"**


_____
Gardbuck, LLC

By: _____ (Print Name)

As its: _____ (Title)

Date _____

13

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

**"PLAINTIFF"**

_____
Dakota Holt

Date _____

**"RNT"**

_____
Rock N Taco, Inc.

By: _J. BRAD HANCOCK_____ (Print Name)

As its: _PRINCIPLE_____ (Title)

Date _4/2/19_____

**"Gardbuck"**

_____
Gardbuck, LLC

By: _____ (Print Name)

As its: _____ (Title)

14

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

**"PLAINTIFF"**

_____

Dakota Holt

Date _____

**"RNT"**

_____

Rock N Taco, Inc.

By: _____ (Print Name)

As its: _____ (Title)

Date _____

**"GARDBUCK"**

*Chad Tullos*

_____

Gardbuck, LLC

By: _____Chad Tullos_____ (Print Name)

As its: _____Vice President_____ (Title)

Date _____3/29/2019_____

13

**EXHIBIT 1**

1.    An accessible route from the public sidewalk to the accessible entrance(s) of the Facility will be created on the Property, in compliance with section 206.2.1 of the 2010 ADAAG standards.

2.    The accessible parking space on the Property and its associated adjacent access aisle shall be resurfaced or otherwise modified so that each has a slope equal to, or less than, 1:48 (one to forty-eight), and further, to eliminate any excessive vertical rises within their boundaries, respectively, in compliance with section 502.4 of the 2010 ADAAG standards.

3.    The side flares of the accessible ramp on the Property that leads from the accessible parking space to the front entrance of the Facility will be modified to have slopes less than, or equal to, 1:10 (one to ten), in compliance with section 406.3 of the 2010 ADAAG standards.

4.    The ground surface within the required maneuvering clearance at the entrance to the Facility will be resurfaced or otherwise modified so that it is level, in compliance with section 404.2.4.4 of the 2010 ADAAG standards.

5.    Plaintiff has alleged that the interior of the Facility has a bar lacking any portion of which that has a maximum height of 34 (thirty-four) inches from the finished floor, in violation of section 902.3 of the 2010 ADAAG standards. The Parties stipulate and agree that it is not readily achievable to modify the

1

bar to comply with said standard, and as a readily achievable alternative, accessible seating will be made available within reasonable proximity to the bar offering dining surfaces provided for consumption of food or drink that comply with sections 226.1, 306 and 902.2 of the 2010 ADAAG standards.

6.     Plaintiff has alleged that there are changes in level in the interior of the Facility exceeding ½ inch that are not ramped, resulting in the absence of an accessible route connecting all accessible elements and features within the Facility, and thus rendering the main dining area and exterior dining area inaccessible to disabled individuals, in violation of sections 206.2.4 and 303.4 of the 2010 ADAAG standards. The Parties stipulate and agree that it is not readily achievable to install an appropriately sloped ramp in the interior of the Facility to provide access to the main dining room therein. As a readily achievable alternative, sufficient accessible seating that complies with sections 226.1, 306 and 902.2 of the 2010 ADAAG standards will be made available in the bar area per Item #5, above, that will accommodate disabled patrons.

7.     The exterior of the Facility will be modified so that at least 5% (five percent) of the dining surfaces provided for consumption of food or drink provide for adequate knee and toe clearance, and are positioned for a forward approach, in compliance with sections 226.1, 305 and 902.2 of the 2010 ADAAG standards.

2

8.    The restrooms in the Facility will be modified to provide for adequate clear turning space, in compliance with sections 304 and 603.2.1 of the 2010 ADAAG standards. In the alternative, such turning space shall be increased to the maximum readily achievable extent.

9.    The accessible toilet stalls in the restrooms in the Facility will be modified to provide for adequate clear turning space, in compliance with section and 604.3.1 of the 2010 ADAAG standards. In the alternative, such turning space shall be increased to the maximum readily achievable extent.

10.   The accessible toilet stall door(s) in the restroom(s) of the Facility will be modified so that they are self-closing, in compliance with section 604.8.2.2 of the 2010 ADAAG standards.

11.   The commodes in the accessible stalls in the restrooms of the Facility will be modified so that the flush control is located on the open side of the accessible stall, in compliance with section 604.6 of the 2010 ADAAG standards.

12.   The mirrors in the restrooms of the Facility will be relocated within the permissible ranges set forth in section 603.3 of the 2010 ADAAG standards.

3